Bay, J.
ordered accordingly.
*373 Adjourned Court, at Columbia, 1st of December, 1794.
Present, Rutledge, Ch. J. Burke and Bay, Judges.
The prisoner was now brought into court, when
Holmes, conformably to the notice he had given, moved for a new trial,- on the ground of gross misbehaviour on the part of the foreman of the jury who had convicted him. To prove this he produced the affidavit of a certain Harry Thompson, who swore, that on the morning of the day of trial, he had a conversation with the foreman, about the prisoner ; in which he declared, that he had come from home to hang every damned counterfeiting rascal, and that he was determined to hang Hopkins at all events, or words to that effect. This, the counsel contended, was such an improper piece of conduct on the part of the foreman, as was sufficient to vitiate any verdict, much more so, where the life of a citizen was concerned. In support of this doctrine, he relied on 2 Morgan, 25. where a new trial was granted, upon an affidavit that the foreman had declared that the plaintiff should never have a verdict, whatever witnesses he produced. Also, on Salk. 645. where the same point was ruled.
Pringle, also in support of the motion, .urged, that the declaration of the foreman before the trial, if it had been known, would have been a good cause of challenge, even after twenty peremptory challenges ; and if so, was a good ground for a new trial, after verdict. 5 Bac. 250. Because the law requires they should be omni exceptione ma-yores — not liable to an objection on account of malice, ill-will, hatred, revenge, or the like. If they are under the influence of any of these passions, they are certainly improper jurors to try a citizen for his life. In Co. Lift. 155. it is laid down, that express malice was a good ground of challenge. Here the counsel said, the malice was express; because the juryman had declared that he was determined to hang the prisoner at all events. No words could possibly *374 express a greater degree of malice and ill-will against an unfortunate man, whose life was about to be committed tó a jury of his country, than those made use of by the foreman ; and that too, before he had heard the evidence, or Could possibly form any idea whether he was innocent or guilty of the offence laid to his charge*
Lee, solicitor, opposed the motign, on the ground that Thompson, who had made the affidavit in this case, was a man of a notorious bad character, a bill of indictment having been found against him for horse-stealing ; so that he was not worthy of credit in a court of justice. The solicitor then opposed it on the further ground of its opening a door for setting aside every verdict which may be given in the different districts throughout the state ; as, he said, nothing was more easy than to procure unprincipled metí to impeach the conduct of jurors, after trial, when they were not present to defend themselves 5 and were at so great a distance from the adjoürned court, that they could not be called upon to answer such charges, before the rising of the court. This would, in every case, create a delay of six months, even if the verdict should not be Set aside eventually ; and in the mean time, the persons making such affidavits, might get Out of the reach of justice before the ensuing court, when the matter might be cleared up, by the examination of such juror or jurofs, on oath, and thereby elude prosecution for perjury.
The prisoner’s counsel, in reply, said, it was not the province of the court to judge of the credibility of the witness ; they were bound to take it for granted, that what is sworn to upon the face of the affidavit is true. And that it by no means followed, that because a man was accused of a crime, he was to be deemed guilty of it: on the contrary, the law presumed every man innocent, until his guilt was stamped by conviction.
The Court, after hearing the arguments, were of opinion, that the matter of fact set forth in the affidavit, if true, was a good ground for a new trial; and it would be difficult to *375 say it was not so, even if the character of the witness was of a suspicious nature. At all events, it was a doubtful point; in which case, it was the duty of the court to lean on the merciful side, and give the prisoner another chance for a fair trial.
A new trial was accordingly ordered, and the prisoner remanded to Orangeburg'h gaol. He was again tried at the ensuing spring sessions, and acquitted.